UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:                                                   CASE NO. 14-51099

MATAGORDA ISLAND GAS OPERATIONS, LLC          CHAPTER 11

DEBTOR

## OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7, OR IN THE ALTERNATIVE, TO DISMISS

**MAY IT PLEASE THE COURT:**

Matagorda Island Gas Operations, LLC ("***Debtor***"), as debtor and debtor-in-possession, by and through undersigned counsel, submits this opposition to the *United States Trustee's Motion to Convert Case to Chapter 7, or in the Alternative, to Dismiss* (**Docket No. 33**) ("***Motion***") filed on behalf of the Office of the United States Trustee ("***OUST***") as well as the *Memorandum in Support of the United States Trustee's Motion to Convert Case to Chapter 7* (**Docket No. 40**) ("***Joinder***") filed on behalf of Shamrock Energy Solutions, LLC ("***Shamrock***").

### Summary of Opposition

The Motion should be denied as there is no mandatory cause for dismissal or conversion pursuant to 11 U.S.C. § 1112(b)(4) insofar as the current lack of insurance poses no credible risk to the estate or to the public at this time. Additionally, the Debtor has and continues to diligently attempt to comply with the Order to the Debtor in Possession (**Docket No. 6**) and to obtain the necessary insurance and reasonably believes that such insurance can be put in place prior to the existence of any actual risk to the estate or public. Finally, conversion of the case would serve no purpose whatsoever since a Chapter 7 Trustee would lack any ability or mandate to attempt to

1

pursue the SOP Appeal,[1] construction of a replacement pipeline, and restart of the Debtor's oil and gas production <u>and</u> the liquidation value of the remainder of the assets of the estate is negative or negligible. The <u>only</u> reasonable prospect for recovery to any creditors of the Debtor's estate is through the pursuit of the SOP Appeal and thereafter construction of a pipeline in order to restore production of oil and gas and/or pursuit of the litigation claims of the Debtor's estate.

## Background

On September 3, 2014 (the "***Petition Date***"), the Debtor filed the voluntary petition herein pursuant to Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). The Debtor continues as debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. The petition was filed primarily to preserve rights pursuant to three (3) certain contracts with the United States Department of Interior, Bureau of Ocean Energy Management for the development and exploration for oil and gas production of three (3) tracts located in the Matagorda Island Area off the coast of Texas in the Gulf of Mexico (the "***Offshore Tracts***"). As detailed in the Debtor's Schedules of Assets (**Docket No. 22**), the overwhelming majority of the value of all of the assets of the Debtor is found in the oil and gas reserves in the Offshore Tracts. Furthermore, the remaining tangible assets of the Debtor are likely of negligible or net negative value after offsetting (i) the plug and abandonment obligations associated with the removal of most of those assets <u>and</u> (ii) the necessary expenses associated with actually removing and scrapping those assets.

Due to circumstances almost entirely beyond the control of the Debtor, the Debtor is not currently operating its assets and no production of oil or gas is possible at this time. Prior to

---

[1] Defined herein below.

approximately November 16, 2013, the Debtor had several producing wells which utilized the Matagorda Offshore Pipeline System ("*MOPS*") infrastructure for delivery of that production to market. Production was halted as of approximately that same date due to a delay in completing a required audit. However, on February 7, 2014 an Order of Abandonment was issued by the Federal Energy Regulatory Commission ("*FERC*") approving the abandonment and decommissioning of MOPS by Northern Natural Gas Company ("*Northern*"), the operator of the lease upon which MOPS was located.[2] The Debtor was not notified of the FERC abandonment proceedings, nor of Northern's preceding application to the Department of Interior in June 2013 for the relinguishment and decommissioning of MOPS. Indeed, the Debtor had no notice or opportunity to participate in the FERC proceedings leading to the Abandonment Order and the Debtor only received notification of the Abandonment Order by letter dated March 21, 2014 from Northern to the Debtor. The decommissioning and abandonment of MOPS was entirely improper since it was accomplished without notice to the Debtor and based at least in part upon the false representation that the MOPS system was not in use by the Debtor. The Debtor believes that it has various claims arising out of and related to the Abandonment Order including claims against or otherwise involving the United States Department of Interior, the Minerals Management Services, the Bureau of Safety and Environmental Enforcement ("*BSEE*"), STL Pipeline, LLC, and Northern and those claims are described in the Schedules of Assets.[3]

On July 14, 2014, subsequent to the untimely notice of the Abandonment Order, the Debtor submitted a Suspension of Operations ("*SOP*") Request to BSEE including a detailed

---

[2] As disclosed in the Debtor's Schedules of Assets, the Debtors owns certain pipelines located on the Offshore Tracts which connect to MOPS on an adjacent tract.
[3] *See* Schedule B-21 at **Docket No. 22**.

plan and request for approval for the construction and installation of a new pipeline to deliver the Debtor's oil and gas production to market including detailed information regarding the financing of the proposed pipeline construction. Despite the commitment and obligation of BSEE to provide a prompt reply to the SOP Request, that response was not timely received and the Debtor was compelled to file the voluntary petition to preserve its contractual rights. On October 10, 2014, BSEE issued a denial of the SOP Request based inappropriately upon information not found within the SOP Request itself. On December 3, 2014, the Debtor filed its Notice of Appeal of the denial of the SOP Request (the "*SOP Appeal*").

### Lack of Cause for Conversion or Dismissal

Contrary to the representations in the Motion, cause does not exist for conversion or dismissal of the Debtor's case pursuant 11 U.S.C. §§ 1112(b)(4)(C), (E), (F), or (K). Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is a cause for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(C). The Debtor does currently lack property or liability insurance. However, given the nature and location of the Debtor's assets and the lack of any current operations or employees, the lack of such insurance at this time poses no real risk to the estate or to the public. As discussed above, the assets of the Debtor's estate are compromised almost entirely of rights in oil and gas reserves which are located under the Outer Continental Shelf and certain platforms and associated field infrastructure which is not being used, is shut-in, and is anchored to the seabed. These assets are not going anywhere and do not pose any real risk to the public at this time and the lack of insurance at this time does not constitute cause for conversion or dismissal

4

pursuant to Section 1112(b)(4)(C).[4] Regardless, and as detailed below, the Debtor expects to have appropriate insurance in place well prior to the start of hurricane season at which time it could at least be argued that there would be some possible risk of loss or damage to the field infrastructure.

Section 1112(b)(4)(E) provides that the "failure to comply with an order of the court" is a cause for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(E). The Debtor's representatives have diligently attempted and continue to attempt to comply with the Order to the Debtor in Possession to obtain property and liability insurance. Specifically, the Debtor contacted the Gallagher agency through which the Debtor had previously obtained insurance in order to renew or obtain new insurance. The agency did not respond until October 22, 2014 that they would not provide a quote for the requested insurance coverage. The Debtor's representative then travelled to Mandeville, Louisiana to dig through files in storage to locate and retrieve binders detailing the prior policies in order to provide the details necessary to satisfy coverage requirements of a new insurance carrier.

After multiple contacts, the Debtor's representative identified Global Special Risks of New Orleans and discussed the coverage needs with its lead underwriter, John Michel. On November 7, 2014, Global Special Risks referred the Debtor to Donnaway Insurance. The Debtor's representative provided voluminous documentation and additional information over several weeks and was informed on November 26, 2014 that initial quote details from Lloyd's of

---

[4] *See In re Sunnyland Farms*, *Inc.*, 517 B.R. 263, 267-68 (Bkrtcy. D.N.M., 2014) finding no cause for conversion or dismissal for lack of insurance where the debtor was not an operating business, the property at issue was not an attractive nuisance or otherwise a danger to ordinary citizens and the Debtor could not afford insurance at the time. *See also In re Melendez Concrete, Inc.*, 2009 WL 2997920, *2 and *5 (Bkrtcy. D.N.M. 2009) finding that lack of insurance and adequate insurance for certain assets did not pose a risk to the estate or the public and alone did not

5

London were expected on December 1, 2014. However, the quote details were delayed as a result of the illness of the London underwriter and then additional requests for information. It was not until December 11, 2014, that the Debtor's representative received an informal initial quote from Donnaway Insurance.

The Debtor expects a formal quote to be received in the coming hours or perhaps days. Thereafter, the Debtor will have to take additional steps to obtain the necessary funds to pay for that insurance. At present, the Debtor has a commitment from a lender/joint venturer to provide/lend the necessary funds and expects to be able to obtain those funds by mid to late January 2015.[5] Thus, the Debtor has taken and continues to make every effort to comply with the requirement of the Order to Debtor in Possession to obtain and maintain insurance.

Section 1112(b)(4)(F) provides that the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" is a cause for conversion or dismissal.[6] The Motion alleges that the October 2014 monthly operating report was not timely filed. The Order to Debtor in Possession provides that the Debtor shall file the monthly operating reports on or before the 15th day of each month.[7] Thus, the October 2014 monthly operating report was due on November 15, 2014 which was a Saturday. The Debtor's October 2014 monthly operating report was mailed to the OUST on November 13, 2014 and electronically filed on Monday, November 17, 2014.[8] The Debtor

---

constitute cause to convert or dismiss.
[5] The Debtor will likely be required to seek approval of such funding as Debtor In Possession financing pursuant to 11 U.S.C. § 364 and will file an appropriate motion once the formal quote is delivered and a final agreement with the lender is reached.
[6] 11 U.S.C. § 1112(b)(4)(F).
[7] **Docket No. 6**.
[8] **Docket No. 32**.

6

submits that the submission of the October 2014 monthly operating report was, in fact, timely[9] and there is no cause for conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(4)(F).

Section 1112(b)(4)(K) provides that the "failure to pay any fees or charges required under chapter 123 of title 28" is cause for conversion or dismissal.[10] The quarterly fee due to the OUST has been paid,[11] so there is no cause for conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(4)(K).

**Conversion is Not in the Best Interests of the Estate or its Creditors**

Contrary to the unsupported allegations in the Joinder, there is no reason to believe that conversion of this case is in the best interests of the creditors of the Debtor's estate. A Chapter 7 Trustee would have no mandate to pursue the SOP Appeal the purpose of which is to enable the Debtor to restart production from the oil and gas reserves located under the Offshore Tracts. The remaining assets of the Debtor are (i) the field infrastructure and (ii) the claims arising out of the issuance of the Abandonment Order. The value of the field infrastructure is found in its ability to facilitate the production of the oil and gas reserves. Apart from that utility, the field infrastructure has negligible or net negative value from as a result of the plug and abandonment obligations and actual costs which would be incurred in relation to the removal and scrapping of those assets. Although a Chapter 7 Trustee might be able to engage contingency counsel to pursue the claims arising out of the issuance of the Abandonment Order, those claims will necessarily involve considerable litigation expenses including the retention of experts and

---

[9] Rule 9006 of the Federal Rules of Bankruptcy Procedure provides in relevant part: "The following rules apply in computing any time period specified . . . in any local rule or court order. . . . When the period is stated in days or a longer unit of time; . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Rule 9006(a)(1)(C).

voluminous discovery against well-funded adversaries. A solvent corporation producing and selling billions of cubic feet of oil and gas reserves would likely make a more credible and potentially successful plaintiff in such litigation.

### Dismissal is Not in the Best Interests of the Estate or its Creditors

Although dismissal would be preferable to conversion because there would at least continue to be the possibility of development and production of the oil and gas reserves in the Offshore Tracts, the dismissal could arguably result in the loss of certain contractual rights of the Debtor in those Offshore Tracts.

### Conclusion

At the present time, the only avenue for reorganization of the Debtor's business and any substantial recovery to the creditors of the Debtor's estate is through the successful pursuit of the SOP Appeal,[12] the construction of a new pipeline, and commencement of production and further development of the oil and gas reserves in the Offshore Tracts. The Debtor is pursuing the SOP Appeal and is taking every reasonable step to obtain the necessary insurance and there is no current cause for conversion or dismissal of the Debtor's case. Therefore, the Motion should be denied.

---

[10] 11 U.S.C. § 1112(b)(4)(K).
[11] *See* copy of payment by check attached as Exhibit A.
[12] The exhaustion of all such administrative remedies is a necessary prerequisite to any legal action that might be taken by the Debtor.

Respectfully Submitted,

LUGENBUHL, WHEATON, PECK,        */s/ Christopher T. Caplinger*
   RANKIN & HUBBARD        STEWART F. PECK (#10403)
                                 CHRISTOPHER T. CAPLINGER (#25357)
                                 BENJAMIN W. KADDEN (#29927)
                                 JOSEPH P. BRIGGETT (#33029)
                                 601 Poydras Street, Suite 2775
                                 New Orleans, LA 70130
                                 Telephone: (504) 568-1990
                                 Facsimile: (504) 310-9195
                                 Email: speck@lawla.com;   ccaplinger@lawla.com;
                                         bkadden@lawla.com;  jbriggett@lawla.com
                                 *Attorneys for the Debtor*

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing has been served upon the parties identified below that receive electronic notice via the Court's CM/ECF system, as well as those parties listed on the attached service list via first class mail on this  *15ᵗʰ*  day of December 2014.


                                                    */s/ Christopher T. Caplinger*

9