UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:                                                      CASE NO. 14-51099

MATAGORDA ISLAND GAS OPERATIONS, LLC        CHAPTER 11

DEBTOR

**MOTION FOR ENTRY OF ORDER: (A) AUTHORIZING DEBTOR TO INCUR POST-PETITION SECURED INDEBTEDNESS (B) TO GRANT SECURITY INTEREST AND PRIORITY CLAIMS PURSUANT TO SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY CODE, (C) MODIFYING THE AUTOMATIC STAY, AND (D) APPROVING AGREEMENT WITH AIC INVESTMENTS LIMITED**

**NOW INTO COURT**, comes Matagorda Island Gas Operations, LLC ("*Debtor*"), as debtor and debtor-in-possession, which hereby moves (this "*Motion*") for entry of an order (A) authorizing the Debtor to incur post-petition secured indebtedness, (b) to grant security interest and priority claims pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, (C) modifying the automatic stay, and (D) approving the proposed agreement with AIC Investments Limited. In further support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1.

This Court has jurisdiction over this case, these proceedings, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (M), and (O). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## SUMMARY

2.

In this Motion, the Debtor requests authority to enter into debtor in possession financing (the "*DIP Loan*") in order to preserve its property and support its efforts in developing a plan of reorganization. The DIP Loan in the total proposed amount of $500,000.00 will be used for the purposes discussed herein, including for obtaining necessary insurance and payment of administrative expenses.

## LEGAL STANDARD

3.

Post-petition debtor-in-possession financing is governed by Section 364 of the Bankruptcy Code. Courts may approve post-petition financing on a secured, super-priority administrative basis under Section 364(c) of the Bankruptcy Code, and commonly do so when the financing is necessary for the reorganization of the debtor.

4.

This Motion is filed under Section 364 of the Bankruptcy Code.

## FACTUAL BACKGROUND

5.

On September 3, 2014 (the "*Petition Date*") the Debtor commenced a voluntary bankruptcy case under Chapter 11, Title 11 of the United States Code (the "*Bankruptcy Code*"). The Debtor continues to manage its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.

The petition was filed primarily to preserve rights pursuant to three (3) certain contracts

2

with the United States Department of Interior, Bureau of Ocean Energy Management for the development and exploration for oil and gas production of three (3) tracts located in the Matagorda Island Area off the coast of Texas in the Gulf of Mexico (the "***Offshore Tracts***").

7.

As detailed in the Debtor's Schedules of Assets (**Docket No. 22**), the overwhelming majority of the value of all of the assets of the Debtor is found in the oil and gas reserves in the Offshore Tracts.

8.

The Debtor has other tangible assets including pipelines, caissons, platforms, and other related equipment and materials. However, those assets are likely of negligible or net negative value after offsetting (i) the plug and abandonment obligations associated with the removal of most of those assets <u>and</u> (ii) the necessary expenses associated with actually removing and scrapping those assets.

9.

Due to circumstances almost entirely beyond the control of the Debtor, the Debtor is not currently operating its assets and no production of oil or gas is possible at this time. Prior to approximately November 16, 2013, the Debtor had several producing wells which utilized the Matagorda Offshore Pipeline System ("***MOPS***") infrastructure for delivery of that production to market. Production was halted as of approximately that same date due to a delay in completing a required audit.

10.

However, on February 7, 2014 an Order of Abandonment was issued by the Federal Energy Regulatory Commission ("***FERC***") approving the abandonment and decommissioning of

MOPS by Northern Natural Gas Company ("**Northern**"), the operator of the lease upon which MOPS was located.[1]

11.

The Debtor was not notified of the FERC abandonment proceedings, nor of Northern's preceding application to the Department of Interior in June 2013 for the relinquishment and decommissioning of MOPS. Indeed, the Debtor had no notice or opportunity to participate in the FERC proceedings leading to the Abandonment Order and the Debtor only received notification of the Abandonment Order by letter dated March 21, 2014 from Northern to the Debtor.

12.

The decommissioning and abandonment of MOPS was entirely improper since it was accomplished without notice to the Debtor and based at least in part upon the false representation that the MOPS system was not in use by the Debtor. The Debtor believes that it has various claims arising out of and related to the Abandonment Order including claims against or otherwise involving the United States Department of Interior, the Minerals Management Services, the Bureau of Safety and Environmental Enforcement ("**BSEE**"), STL Pipeline, LLC, and Northern and those claims are described in the Schedules of Assets.[2]

13.

On July 14, 2014, subsequent to the untimely notice of the Abandonment Order, the Debtor submitted a Suspension of Operations ("**SOP**") Request to BSEE including a detailed plan and request for approval for the construction and installation of a new pipeline to deliver the Debtor's oil and gas production to market including information regarding the financing of the proposed pipeline construction by AIC Investments Limited.

---

[1] As disclosed in the Debtor's Schedules of Assets, the Debtor owns certain pipelines located on the Offshore Tracts which connect to MOPS on an adjacent tract.
[2] *See* Schedule B-21 at **Docket No. 22**.

4

14.

Despite the commitment and obligation of BSEE to provide a prompt reply to the SOP Request, that response was not timely received and the Debtor was compelled to file the voluntary petition to preserve its contractual rights.

15.

On October 10, 2014, BSEE issued a denial of the SOP Request based upon information not found within the SOP Request itself. On December 3, 2014, the Debtor filed its Notice of Appeal of the denial of the SOP Request (the "***SOP Appeal***").

16.

A favorable result in the SOP Appeal will result in the Debtor authorization to commence the construction of a replacement pipeline for the MOPS system. As noted above, the Debtor already has a financing commitment by AIC Investments Limited as well as a contract for construction of that pipeline.[3] Therefore, in the event of a favorable SOP Appeal result the Debtor would then submit a plan seeking approval of that financing and providing for the construction of the replacement pipeline which when completed would enable the Debtor to restart production from existing but shut-in wells on the Offshore Tracts.[4]

**Pre-Petition Transactions Between the Debtor and AIC, LLC**

17.

On or about October 4, 2012, the Debtor entered into the Funding Agreement with AIC, LLC, a Georgia Limited Liability Company and an affiliate of the proposed Lender, AIC Investments Limited, which is a Hong Kong entity ("***Funding Agreement***").

---

[3] The design and construction contract is with Pelican Energy Consultants, LLC.
[4] The prosecution of the SOP Appeal is also necessary in order to exhaust administrative remedies prior to the commencement of any litigation regarding the denial of the SOP Request.

18.

The Funding Agreement was a essentially loan and joint venture agreement which provided for AIC, LLC to provide a total of $134,000,000 in exchange for favorable loan terms (five years at six percent (6%) interest) and a thirty-five percent (35%) ownership interest in the Debtor and other consideration including execution of a promissory note and provision of a security interest in the assets of the Debtor.

19.

Due in substantial part to delays associated with the factual background discussed above, the funding contemplated in the Funding Agreement did not occur, but on or about December 23, 2013, the Debtor and AIC entered into a Continuation and Assignment Agreement providing for the extension of the Funding Agreement and bridge financing in the amount of $1,500,000.00. Again, however, due to the difficulties associated with the shut-in of the Offshore Tracts and the decommissioning of MOPS, the bridge financing was not actually provided to the Debtor and AIC, LLC is not creditor of the Debtor.

20.

Moreover, neither the Debtor nor its sole member, Matagorda Energy Company, LLC, nor the sole member of Matagorda Energy Company, LLC, Mr. Richard Watson, nor the President of the Debtor, James Hurley, hold any equity or other interest in AIC, LLC or AIC Investments Limited.

**NEED FOR DEBTOR-IN-POSSESSION FINACING**

21.

Pursuant to Section 364(c) of the Bankruptcy Code, the Debtor requests that the Court authorize the secured, administrative super-priority DIP loan. The Debtor has determined that it

is unable to obtain credit in another manner, or on any terms superior to those in the DIP Loan. Further, as discussed herein, the Debtor submits that entering into the DIP Loan is necessary to cover necessary insurance, and other expenses, and as a first step toward the contemplated plan of reorganization that will allow the Debtor to provides recovery to unsecured creditors and address their debts and claims.

## TERMS OF PROPOSED DIP LOAN

22.

A summary of the material terms of the DIP Loan to be provided by AIC Investments Limited ("*Lender*") are as follows:

| | |
|---|---|
| Amount of DIP Loan and Use of Proceeds: | DIP Loan in the total amount of $500,000.00 for the purposes set forth in the projected budget attached as Exhibit A hereto ("*Budget*"). The |
| DIP Obligations: | DIP obligations (the "*DIP Obligations*") to be repaid under the DIP Loan include: all outstanding principal, interest, and fees as described below. |
| DIP Loan Interest and Fees: | Interest rate of Five Percent (5%) on annual basis.<br><br>The Debtor agrees, up to a maximum of $10,000.00, to pay Lender's accounting and administrative costs as well as Lender's attorney fees incurred in connection with the preparation of the DIP Loan documents, approval of the DIP Loan and maintenance of the DIP Loan. The Debtor will also be liable in the event of default for any default related fees and penalties and attorneys' fees, including attorneys' fees in connection with the collection of amounts owe. |
| Closing or Commitment Fees: | None. |
| DIP Loan Termination Date: | No repayment of DIP Obligations is due until the earliest to occur of the following (such date being the "*Termination Date*"):<br><br>(i) closing of a sale of stock or assets of the Borrower (pursuant to a plan and/or a sale authorized under 11 U.S.C. § 363),<br>(ii) September 30, 2015, with such period being extendable by the Lender in writing at its reasonable discretion<br>(iii) upon the appointment of a Chapter 11 trustee; |

| | |
|---|---|
| | (iv) the filing of a plan of reorganization not approved in writing by the Lender<br>(v) conversion to Chapter 7; and<br>(vi) the occurrence of an event of default under the DIP note or DIP loan agreement not cured within the applicable cure period. |
| Super – Priority Claim and DIP Lender Lien: | The Lender shall be granted a super-priority administrative claim ("**Super-Priority Claim**") for all DIP Obligations pursuant to Section 364(c)(1) of the Bankruptcy Code. In addition, Lender shall be granted a first priority and priming security interest and lien on all the furniture, fixtures and equipment of the Debtor as well a first priority and priming security interest and lien, mortgage against the Debtor's interests in the Offshore Tracts. The Lender shall also be granted a first priority and priming security interest and lien in all receivables of the Debtor. |
| Documentation | The Debtor and Lender shall execute a note, security agreement, DIP loan agreement containing a detailed list of events of default. |
| Conditions Precedent to Closing: | Closing conditions include:<br><br>(i)    receipt and approval by Lender of an initial Budget;<br>(ii)   receipt of all necessary consents;<br>(iii)  finalization and execution of a note, security agreement, DIP loan agreement containing a detailed list of events of default;<br>(iv) approval from the bankruptcy court and entry of an interim and/or final order (containing terms and conditions acceptable to Lender) approving the DIP facility;<br>(v) Lender shall be granted the right, of first refusal with respect to any replacement DIP Loan;<br>(vi)   in the event that the Borrower obtains a replacement DIP Loan, the Lender shall receive payment of all amounts owed to Lender pursuant to the DIP Loan. |
| Events of Default: | In the event that any of the following occur or fail to occur <u>and</u> such occurrence or failure is not cured within five (5) days, the following will be Events of Default under the DIP Loan:<br>(1)    Default in the payment of principal or interest under the note or nay of the indebtedness.<br>(2)    Failure to comply fully with any of the terms or conditions of, or default under the mortgage.<br>(3)    Default under any order issued by the bankruptcy court or plan of reorganization confirmed by the bankruptcy court.<br>(4)    The appointment of a trustee or other fiduciary for the Debtor of the property of the estate of the Debtor.<br>(5)    The conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.<br>(6)    The dismissal of the Debtor's Chapter 11 case.<br>(7)    Any change in the existing management of the Debtor not specifically consented to by Lender. |

| | |
|---|---|
| | (8) Default under any related document which directly or indirectly secures repayment of any of the indebtedness.<br>(9) Debtor or any guarantor defaults under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.<br>(10) Any warrant, representation or statement made or furnished by the Debtor or on behalf of the Debtor, to the Lender is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.<br>(11) Not including the initial Budget, Debtor fails to provide any subsequent budget to Lender prior to the commencement of that Budget period.<br>(12) Debtor variance from any Budget line item by more than five percent (5%) during the applicable Budget period.<br>(13) Debtor fails to comply with or to perform any other term, obligation, covenant or condition contained in the mortgage or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and the Debtor. |
| <u>Remedies:</u> | Should or more events of default occur or exist, the Lender, upon obtaining an order of the bankruptcy court lifting the stay, the Lender at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights and remedies provide by law: (1) acceleration, foreclosure, (2) seizure and sale of property, (3) executory process, (4) seek appointment as keeper, (5) declare facts to constitute authentic evidence for purposes of executory process, (6) separately sell rights at private or public sale, (7) all policies of insurance shall automatically incur to the benefit of and shall pass to the purchaser(s) or transferee(s), (8) commence an appropriate action against the Debtor seeking specific performance, and (9) Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.<br><br>Interest shall accrue at a default rate of eight percent (8%) |

23.

The DIP Loan Financing requested herein is necessary to fund amounts necessary to obtain insurance and to pay certain incurred and anticipated administrative expenses of the Debtor as set forth in the attached Budget (Exhibit A).

24.

A proposed form of order is attached as Exhibit B hereto. In addition to the foregoing

terms, the proposed order includes other customary terms for DIP financing orders.

**WHEREFORE,** for the foregoing reasons the Debtor respectfully requests that the Court grant its Motion and enter an order in the form attached as Exhibit B hereto.

Respectfully Submitted,

| | |
|---|---|
| LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD | */s/ Christopher T. Caplinger*<br>STEWART F. PECK (#10403)<br>CHRISTOPHER T. CAPLINGER (#25357)<br>BENJAMIN W. KADDEN (#29927)<br>JOSEPH P. BRIGGETT (#33029)<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130<br>Telephone: (504) 568-1990<br>Facsimile: (504) 310-9195<br>Email: speck@lawla.com;  ccaplinger@lawla.com; bkadden@lawla.com;  jbriggett@lawla.com<br>*Attorneys for the Debtor* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the parties identified below that receive electronic notice via the Court's CM/ECF system, as well as those parties listed on the attached Service List A by certified mail and those parties listed on Service List B via first class mail on this _3rd_ day of February 2015.

Carl Dore', Jr. on behalf of Stallion Offshore Quarters, Inc.: carl@dorelawgroup.net, vmartinez@dorelawgroup.net

Gail Bowen McCulloch on behalf of U.S. Trustee: gail.mcculloch@usdoj.gov

Office of U. S. Trustee: USTPRegion05.SH.ECF@usdoj.gov

William C. Vidrine on behalf of Shamrock Energy Solutions, LLC: williamv@vidrinelaw.com, debbie@vidrinelaw.com

Christopher J. Weema on behalf of Fidelity & Deposit Company of Maryland: cweema@kfplaw.com, lboullosa@kfplaw.com

*/s/ Christopher T. Caplinger*