UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

| IN RE: | § | CASE NO. 14-51099 |
|---|---|---|
| | § | |
| MATAGORDA ISLAND GAS | § | CHAPTER 11 |
| OPERATIONS, LLC | § | |
| | § | |
| DEBTOR. | § | |

## OBJECTION TO DEBTOR'S MOTION TO BORROW AND APPLICATION TO INCUR SECURED DEBT
**[Relates to Docket No. 71]**

COMES NOW, Stallion Offshore Quarters, Inc. ("Stallion"), and Wood Group PSN, Inc. f/k/a Wood Group Production Services, Inc. ("Wood Group") (collectively the "Lien Creditors"), lien creditors and parties in interest, through undersigned counsel, and files this *Objection to Debtor's Motion to Borrow and Application to Incur Secured Debt*, and would respectfully represent to the Court the following:

### I. FACTS

1. Stallion is in the business of providing services, equipment, labor, and supplies to the oilfield industry. Stallion supplied rental equipment to Matagorda Island Gas Operations, LLC (the "Debtor") in connection with the Debtor's work on certain leasehold interests in Federal waters located offshore Calhoun County, Texas. The Debtor never paid Stallion for these rental services. On May 15, 2013, Stallion filed a lien in Calhoun County (federal offshore) pursuant to Chapter 56 of the Texas Property Code. On June 4, 2013, Stallion perfected its lien and obtained a judgment in state court for the principal sum of $198,229.50 plus fees, interests, and costs. The Debtor is still in possession of Stallion's rental units, and has remained unwilling to return the units despite being ordered to do so in state court. Accordingly, on January 13, 2014 the sole member of the Debtor, Richard Watson, was held in contempt of court in Harris County,

Texas and sentenced to jail. Upon information and belief, Richard Watson has remained in Louisiana and was never arrested.

2. Wood Group is also in the business of providing services, equipment, labor, and supplies to the oilfield industry. The Debtor contracted with Wood Group for certain goods and services. The Debtor never paid Wood Group for those goods and services. On June 20, 2012, Wood Group filed a lien in Calhoun County (federal offshore) pursuant to Chapter 56 of the Texas Property Code. On July 18, 2013, Wood Group perfected its lien claim and obtained a judgment in state court for the principal sum of $1,665,944.95 plus fees, interests, and costs.

3. On September 3, 2014, the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code.

4. On December 5, 2014, the United States Trustee filed a *Motion to Convert Case from Chapter 11 to 7* [Docket No. 33], citing among other things the Debtor's failure to obtain insurance on certain of its offshore platforms. This motion was joined by creditor Shamrock Energy Solutions, LLC [Docket No. 39], and the Lien Creditors [Docket Nos. 53, 78]. The hearing for the motion to convert is currently set for March 31, 2015.

5. On February 3, 2015, the Debtor filed its *Motion to Borrow, and Application to Incur Secured Debt* (the Debtor's "Motion to Borrow") [Docket No. 71], seeking to obtain $5,000,000 through a DIP Facility from AIC Investments Limited (the "Proposed Lender") on a super-priority basis (the "Proposed DIP Facility").

## II. OBJECTION

6. The Lien Creditors hereby object to the relief requested in the Debtor's *Motion to Borrow* for the following reasons: (1) The Debtor should not be granted authority to obtain financing under 11 U.S.C. § 364(c) because it has not shown that it has made a reasonable effort

to seek other sources of financing under 11 U.S.C. §§ 364(a) and (b); (2) The Debtor has not shown that the transaction will enhance the value of the Debtor's assets and thus should not be authorized to obtain credit secured by a "priming" lien as authorized under 11 U.S.C. § 364(d); (3) The Debtor has not attempted to address what kind of adequate protection will be awarded to the parties whose liens will be primed, pursuant to 11 U.S.C. § 364(d)(1)(B); (4) The Debtor has not provided the Lien Creditors or this Court with any proposed loan documents; (5) The Debtor's proposed budget is inadequate; (6) The Debtor has not shown that it has exercised sound business judgment; (7) The Proposed Lender should not be deemed a good faith lender under 11 U.S.C. § 364; and (8) The automatic stay should not be modified or waived.

**A. The Debtor should not be granted authority to obtain financing under 11 U.S.C. § 364(c) because it has not shown that it has made a reasonable effort to seek other sources of financing under 11 U.S.C. §§ 364(a) and (b).**

7. The Debtor cannot obtain authority to obtain financing under 11 U.S.C. § 364(c) because it has not shown that it has made a reasonable effort to seek other sources of financing under 11 U.S.C. §§ 364(a) and (b).

8. Section 364 of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, post-petition financing on a secured or superpriority basis, or both. Specifically, § 364(c) of the Bankruptcy Code provides, in pertinent part, that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

> (a) with priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code;
>
> (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (c) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

9. The statutory requirement for obtaining post-petition credit under 11 U.S.C. § 364(c) is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under § 503(b)(l) of [the Bankruptcy Code] as an administrative expense." *See Ames Dep't Stores*, 115 B.R. at 37–39 (a debtor must show that it has made a reasonable effort to seek other sources of financing under Bankruptcy Code §§ 364(a) and (b)); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under Bankruptcy Code § 364(c) must prove that it was unable to obtain unsecured credit pursuant to Bankruptcy Code § 364(b)).

10. The Debtor does not attempt to satisfy its burden for relief under 11 U.S.C. § 364(c). The Debtor only supplies the Court with one sentence that purports to address this issue: "The Debtor has determined that it is unable to obtain credit in another manner, or on any terms superior to those in the DIP Loan." [Docket No. 71 ¶ 21]. This sentence alone does not satisfy the Debtor's burden. The Lien Creditors do acknowledge receipt of a phone call from Debtor's counsel, asking whether they would be willing to loan any money. However, any attempt by the Debtor to asset that such communication was anything more than a perfunctory effort to demonstrate "reasonable effort" must be rejected as being patently absurd.

11. In fact, the Debtor's prior relationship with the Proposed Lender supports the possibility that the Debtors did not attempt to obtain credit of any kind from any other possible lending source. For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

OBJECTION TO DEBTOR'S MOTION TO BORROW—PAGE 4

14-51099 - #81  File 03/10/15  Enter 03/10/15 17:13:21  Main Document  Pg 4 of 10

**B. The Debtor has not shown that the Proposed DIP Facility will enhance the value of the Debtor's assets and thus should not be authorized to obtain credit secured by a super-priority lien as authorized under 11 U.S.C. § 364(d).**

12. The Debtor has not shown that the Proposed DIP Facility will enhance the value of the Debtor's assets and thus should not be authorized to obtain credit secured by a super-priority "priming" lien as is sometimes authorized under 11 U.S.C. § 364(d).

13. In addition to authorizing financing under 11 U.S.C. § 364(c), courts also may authorize a debtor to obtain post-petition credit secured by a lien that is senior or equal in priority to existing liens on the encumbered property, without the consent of the existing lien holders, if the debtor cannot otherwise obtain such credit and the interests of existing lien holders are adequately protected. *See* 11 U.S.C. § 364(d)(1). The Debtor did not meet, or even attempt to address this burden.

14. When determining whether to authorize a debtor to obtain credit secured by a "priming" lien as authorized by § 364(d), courts focus on whether the transaction will enhance the value of the debtor's assets. Courts consider a number of factors, including, without limitation: (1) whether alternative financing is available on any other basis (*i.e*., whether any better offers, bids or timely proposals are before the court); (2) whether the proposed financing is necessary to preserve estate assets and is necessary, essential and appropriate for continued operation of the debtor's business; (3) whether the terms of the proposed financing are reasonable and adequate given the circumstances of both the debtor and proposed lender(s); and (4) whether the proposed financing agreement was negotiated in good faith and at arm's length and entry therein is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors. *See, e.g.*, *Ames Dep't Stores*, 115 B.R. at 37–39; *Bland v. Farmworker Creditors*, 308 B.R. 109, 113–14 (S.D. Ga. 2003); *In re Farmland Indus.*,

*Inc.*, 294 B.R. 855, 862–79 (Bankr. W.D. Mo. 2003); *In re Lyondell Chem. Co.*, No. 09-10023 (Bankr. S.D.N.Y. Mar. 5, 2009); *Barbara K. Enters., Inc.*, 2008 WL 2439649, *10 (Bankr. S.D.N.Y. June 16, 2008); *see also* 3 COLLIER ON BANKRUPTCY ¶ 364.04[1] (16th ed. rev. 2012).

15. The Proposed DIP Facility does not purport to satisfy any of these factors, and the Debtor has not met its burden to be awarded relief under § 364(d). For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

**C. The Debtor has not attempted to address what kind of adequate protection will be awarded to the parties whose liens will be primed, pursuant to 11 U.S.C. § 364(d)(1)(B).**

16. Further, the Debtor has not attempted to address what kind of adequate protection will be awarded to the parties whose liens will be primed, which is required under § 364(d). A debtor may obtain post-petition credit "secured by a senior or equal lien on property of the estate that is subject to a lien only if" the debtor, among other things, provides "adequate protection" to those parties whose liens are primed. *See* 11 U.S.C. § 364(d)(1)(B). The Lien Creditors both hold valid perfected liens pursuant to Chapter 56 of the Texas Property Code.

17. The Lien Creditors' liens will apparently be primed by the Proposed Lender if the Proposed DIP Facility is allowed to move forward under § 364(d). This is unacceptable to the Lien Creditors without a showing of adequate protection. For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

**D. The Debtor has not provided the Lien Creditors or this Court with any proposed loan documents.**

18. Perhaps the most obvious deficiency with the Debtor's *Motion to Borrow*, is the fact that no proposed loan documents have been provided to the Lien Creditors or this Court. If the Debtor purports that the table appearing under the heading "Terms of Proposed Dip Loan" in its *Motion to Borrow* contains adequate disclosure of the obligation the Debtor wishes to

undertake, the Lien Creditors strongly disagree. The Lien Creditors are extremely worried that the Debtor does not have the income necessary to avoid the default terms listed in the table, and loosely referred to in the Debtor's proposed order.

19. Until the Lien Creditors have a chance to adequately investigate the actual proposed loan documents, the Lien Creditors must object. For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

**E. The Debtor's proposed budget is inadequate.**

20. Similar to the non-existence of the proposed loan documents, the Lien Creditors find the Debtor's proposed budget to be severely inadequate. Furthermore, if the final line of the budget, reading "Bankruptcy/SOP Appeal Administrative Costs" is an attempt at a carve-out for future administrative costs, the Debtor has not attempted to show that the scope of such carve-out is appropriate.

21. Until the Lien Creditors have a chance to adequately investigate a much more detailed budget, including the specifics regarding the insurance options and upcoming administrative costs, the Lien Creditors must object. For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

**F. The Debtor has not shown that is has exercised sound business judgment.**

22. The Debtor has not shown that it has exercised sound business judgment. The Lien Creditors recognize that courts grant a debtor considerable deference in the exercise of sound business judgment in obtaining credit, but sound business judgment should not be assumed, and the Debtor has wholly failed to address this issue. For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

### G. The Proposed Lender should not be deemed a good faith lender under 11 U.S.C. § 364.

23. The Proposed Lender should not be deemed a good faith lender under 11 U.S.C. § 364 without further inquiry. Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its rights in any lien or security interest securing those loans, but the Debtor does not address this issue in its *Motion to Borrow*. The Debtor's proposed order asks for a finding of good faith, but such a finding should not be assumed.

24. For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

### H. The automatic stay should not be modified or waived.

25. Finally, the Lien Creditors object to the modification or waiver of the automatic stay. The Proposed DIP Facility and the proposed order apparently contemplate that the automatic stay arising from 11 U.S.C. § 362 shall be modified upon the occurrence and during the continuation of any event of default. This is troublesome to the Lien Creditors who have not seen the proposed loan documents, and who are forced to imagine what the final binding terms may look like by a piece-meal review of the *Motion to Borrow* and its proposed order.

26. Although the Lien Creditors admit that stay modification provisions of this sort are common features of post-petition financing arrangements, under these circumstances the Lien Creditors must object. For these reasons, the Court should deny the relief requested in the Debtor's *Motion to Borrow*.

### III. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Lien Creditors pray that the Debtor's *Motion to Borrow, and Application to Incur Secured Debt* [Docket No. 71] and the Debtor's requested relief be denied, and that the Lien Creditors be granted and awarded any and all other relief that this Court deems just.

            Respectfully Submitted,

            **DORÉ LAW GROUP, P.C.**

Dated: March 10, 2015        By:   */s/ Carl Doré*
                  Zachary S. McKay
                  TBN: 24073600
                  zmckay@dorelawgroup.net
                  Carl Doré, Jr.
                  TBN: 06000600
                  carl@dorelawgroup.net
                  17171 Park Row, Suite 160
                  Houston, Texas 77084
                  (281) 829-1555
                  (281) 200-0751 Fax

            *Pro Hac Vice Applications Pending*

            *and*

            **BEYT & BEYT, PLC**

        By:   */s/ Aaron Beyt*
                  Aaron Beyt
                  LBN: 32827
                  adb@beytlaw.com
                  700 E. University Ave. - 70503
                  PO Box 52157 - 70505
                  Lafayette, Louisiana
                  337.233.6771
                  337.233.6773 Fax

            *Local Counsel*

            *Attorneys for Lien Creditors,*
            *Stallion Offshore Quarters, Inc., &*
            *Wood Group Production Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2015, a true and correct copy of the foregoing was served by the Court's Electronic Case Filing System to all parties registered or otherwise entitled to receive electronic notices.

          By:    */s/ Carl Doré*
                  Carl Doré, Jr.